First case on the argument calendar, St. Bruce MacCasey. Joe Seguenza for petitioner. In this asylum case, there are three issues presented for the court's consideration. First issue, whether substantial evidence supports the I.J.'s finding of adverse credibility. The second issue is whether the I.J. improperly shifted the burden of proof on the issue of well-founded fear. And the third issue is whether petitioner's case warrants a Chen finding of humanitarian asylum based on the severity of the past abuse as testified to by petitioner. Was that humanitarian asylum argument made to the board? Did you raise that issue with the BIA, the humanitarian asylum? I know it was raised before this court, Your Honor. As far as I can recall, I believe it was also raised before the board. I don't remember offhand whether the board had specifically addressed that in its decision. Was your recollection that you did raise it? It is my understanding that we did. Again, looking at the board decision of March 4th, 2005, they don't comment one way or the other on that. Again, the third issue is whether petitioner's case warrants a Chen finding of humanitarian asylum based on the severity of the past abuse and the asylee status of petitioner's other family members. With respect to the credibility findings, there are four issues that the I.J. had raised as the basis for his adverse finding. And the first issue had to do with the disposition of petitioner's passport and whether the agent had actually boarded the plane with the petitioner and how the agent took back the passport from petitioner. The second issue was why the petitioner was arrested in December 1984, whether he was ever charged with a crime, and what he told the immigration officers at his credible fear interview. The third issue is whether corroboration, corroborating evidence was required given the finding of adverse credibility. And the last credibility issue is actually there are two other issues, rather, testimony regarding petitioner's military service and whether inconsistencies or impossibility regarding the service is material to the asylum claim. And the last credibility issue is whether Khalistan Sikh advocates are required to practice what are called the five Ks with respect to their religion. Let me ask you this. Assuming that we agree with you that the adverse credibility determination of the I.J. and BIA should be overturned, assuming, I continue to have a problem that, according to his own testimony, after he gets out of the military, he lives outside the Punjab for seven years, apparently without great difficulty, and that sounds as though he's able to avoid persecution simply by moving elsewhere in the country. That's what the I.J. found. How do you deal with that argument? Well, I believe in reviewing petitioner's testimony, he did state that he was on the move pretty constantly, and he had traveled to different parts of India, taking 14 hours by train from his hometown to the first state that he relocated to. Well, that was the beginning. But my understanding is that he lived in Bhopal, if that's how you say it, for seven or around there for seven years at different addresses, but that's where he lived. Yes. And he did continue to live in fear. He did testify that his – Well, he said they were still looking for him in Punjab, but he didn't – he said nobody ever bothered him in Bhopal. He operated under his own name. He owned a trucking company. He was married. He applied for a passport in his own name. Nobody bothered him. That's correct, Your Honor. However, he – I believe he did testify before the I.J. that he was afraid that given the fact that his history with the police was discovered by the military when he enlisted in the military and background checks were conducted, he constantly lived with that fear. Certainly, he did testify that for – But he never just substantiated the problem because he lived there for seven years and nothing happened. Yes. Well, on the issue of well-founded fear, if I may, Your Honor, if I can address that, we believe that the I.J. improperly shifted the burden. He basically put the burden on Petitioner to show that – or the I.J., I believe, stated that the fact that he lived in the Bhopal region for a certain period of time by its own rebutted any presumption of well-founded fear, assuming that there was past prosecution. Okay. So why not? I mean, how long do you have to live someplace and not be bothered before the I.J.'s burden to show that you can relocate and be safe? Apparently, he did relocate and he was safe. Well, Petitioner would – For a long time. Petitioner would submit that that issue was not fully explored only because the government produced no evidence to rebut the presumption of well-founded fear, assuming that there was past persecution. There was no individualized determination on country conditions that would either show that there was a significant change in country conditions that would allow Petitioner to return to India or whether he could reasonably relocate to another part of India, and there was no – Well, what would be sufficient evidence if having done it for seven years isn't sufficient evidence? Well, aside from that issue itself, Your Honor, I believe that that – the well-founded fear issue was not fully explored. And we would submit that it wasn't fully explored, and by improperly shifting the burden to Petitioner to justify, if you will, how he was able to live for a certain period of time without the police having found him, it wasn't fully explored at the hearing level. And Petitioner would deserve a reasonable opportunity to have that issue fully explored. As we said – excuse me, as Petitioner would submit, country conditions articles or government proof was not presented to rebut that well-founded fear. Well, it sounds as though he presents it himself. I'm sorry? I was going to say it sounds as though your client presented it himself in his testimony. Well, I believe he also testified, Your Honor, that during the time that he was living in that area, he left – he always lived with a fear that he would somehow be found out. He was found out in his hometown, arrested and detained. Well, you know, all that means is, you know, maybe it's true he had the subjective fear, but the objective circumstances indicate that, as Judge Brezon said, you know, he was there for seven years and, you know, no one did anything to him. Right? Yes, Your Honor. However, we would submit on that issue that – that a remand is an order to fully explore. When you say that issue, what issue are you referring to? On the issue of relocation. Whether Petitioner could have safely relocated to a different part of India, to another part of India. A remand for what purpose? Pardon me? A remand for what purpose? Well, for fully exploring the issue of well-founded fear. Whether or not country conditions had significantly changed to allow Petitioner to return to India, or whether there was sufficient evidence, there is sufficient evidence to show that relocation was possible, aside from the fact that – Well, just a minute, though. I mean, if there is substantial evidence in the record to support the board's determination that, you know, in fact, he did relocate safely for seven years, aren't we bound by that? Why do we have to remand? Or why should we remand? Or how – why can we remand? Well, we would submit that in and of itself that does not constitute substantial evidence to support the board's findings on well-founded fear. So you're saying there isn't substantial evidence on the relocation issue? Yes, Your Honor. All right. Just in summary, Petitioner would submit that he should be deemed credible, and as such, he's established past persecution. As such, he's entitled to a presumption of well-founded fear, and the burden is on the government to produce evidence to show either changed country conditions or the possibility of relocation. That was not explored at the hearing before the IJ. When you say it wasn't explored, did the – you mean the government didn't argue it, or what do you mean by that? I'm sorry, Your Honor? What do you mean by saying it wasn't explored? Did the government argue the relocation issue? No, they did not. Well, they might have – they might have argued it, Your Honor, but there was no corroborating evidence in support of the government's position on that issue. I think the – I believe that the IJ summarily assumed that Petitioner's testimony by itself rebutted the well-founded fear without proof produced by the government, and we would submit that that improperly shifts the burden to Petitioner. And that issue was not – What kind of evidence would – if there were a remand, what kind of evidence would the government have an opportunity to put on that isn't in the record now that would matter? Well, for example, either country conditions articles or an individualized termination or some Department of State advisory opinion or impeaching Petitioner's testimony that he was not able to relocate – safely relocate to another part of India. Those are just some examples of what could be explored on remand. Okay. Why don't we hear from the government, and we'll give you a minute to respond. Thank you. May it please the Court, my name is Jennifer Williams. On behalf of the Respondent, the United States Attorney General, the immigration judge in this case made two independent findings. One was an adverse credibility determination. The second was a finding that even assuming Mr. Singh is credible and established past persecution, the presumption of a well-founded fear of future persecution was rebutted by the fact that for the seven years prior to his leaving India, he lived unharmed and without incident in India. I'd like to just briefly state that there's a footnote in our brief saying that if the Court overturns the adverse credibility determination, it has to remand to the board. We withdraw from that position. We believe that the second finding of no well-founded fear is a sufficient basis upon which to sustain the decision below. I missed that. You're withdrawing from what position? There's a footnote in our brief. It seems like you said we're withdrawing. It seems like it was like a conditional withdrawal. Well, there's a footnote in our brief that says at the end of the adverse credibility discussion that if the Court overturns the adverse credibility determination, it has to remand to the agency under Ventura. I don't know why we said that. It's not correct. It would be correct if we overturned on both issues. Well, yes, but what our brief says is adverse credibility. And our position is that the second finding of no well-founded fear is an independent basis upon which to sustain the decision below and deny the petition for review. All right. So you're withdrawing from that, the contention you put forth in that footnote at the end of that first argument. Yes, and I apologize for that. All right. I follow you now. Thank you. And are you going to have a word with Mr. Falvo? Excuse me? Are you going to have a word with Mr. Falvo, who seems to have written the brief? Yes. And we apologize for that. Well, some of these briefs are written by people who are not in OIL. Is he in OIL? No, he's not. This was actually a brief that was, I believe, he's an assistant United States attorney. I know some are written by attorneys in the tax division, right? That is correct, yes. I can see how these things happen. All right. If I can, I'd like to focus on the second finding, assuming credibility, assuming past persecution, the finding that a preponderance of the evidence shows that Mr. Singh no longer has a well-founded fear of future persecution in India because he was able to safely relocate for seven years. The applicable regulation distinguishes, it's 8 CFR 1208.13b1. It distinguishes between a fundamental change in circumstances such that the applicant no longer has a well-founded fear of future persecution. That's one basis upon which there can be a finding that future persecution has been rebutted. The second basis is that the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality. The finding in this case was based on the second reason, B. And so evidence about changed country conditions goes to A. Mr. Singh's argument is essentially that country conditions have not changed in India, which is the analysis under A. That was not the basis for the decision in this case. And so evidence as to changed country conditions is really irrelevant in this case. In this case, the immigration judge found that he himself lived unharmed in the Bhopal region of India for seven years. What about the fact that there was, if you credited his story, he said that when the army found out about who he was, they sent him back to the Punjab to face these charges. So why couldn't we surmise that if any officials figure out who he was, they would send him back? Well, because in this case, not only did he live unharmed, but he received an official passport from the Indian government. He initiated numerous contacts with the government. I mean, the most official was receiving the passport. He was also married. And there was some testimony, I believe, about how, you know, that involved getting a marriage license. He also ran this national trucking business and had to obtain a commercial driver's license for that. He said he did that illegally, I think. I think he said he wasn't sure. But he did say he obtained a commercial driver's license. So he lived for seven years in another region of India, initiated these contacts with the government, and nothing happened to him. And under those circumstances, the agency properly found that even assuming he suffered past persecution, the presumption of future persecution was rebutted. But his story about the Punjab is that the judge in the Punjab specifically told him not to leave, right? At the second time. The second time, yes. And he did leave. And why isn't there a fairly good surmise that, at least in this country, if you went from you might succeed in living in New York with somebody who's looking for you in California for seven years, but still if somebody found you, they'd extradite you back to California? Well, because the evidence in the record rebutts that supposition. The fact that he did live somewhere else for seven years with nothing happening to him. The fact that he obtained a passport. I mean, he presumably submitted it in his own name. The passport authorities, at any rate, were aware of who he was and where he was living. And nothing happened to him. In a large country with a clumsy bureaucracy, I would think it entirely possible that the left hand is going to have trouble knowing what the right hand is doing. So merely having gotten a passport doesn't necessarily mean that the Indian government is going to put two and two together and send him back to the Punjab. Again, assuming his story is true. Well, I mean, this is all surmise about how the Indian government operates. The facts are... What's interesting about this is, again, if you credit his story, it happened once. So it's unusual in that regard. I mean, he has a story in which, in fact, he was shipped back to the Punjab from elsewhere in the country at an earlier point. That's right. And then after that, I mean, after that second arrest, the uncontroverted facts are that he lived in this Bhopal region for another seven years. Nothing happened. Not only that, but when he was asked why he left in 1997, he said it was because the opportunity arose. It wasn't because something happened or he suddenly became more afraid. He just had an opportunity to leave, and so he did. What do we know about his family members who are here with grants of asylum? How many of his family members have been granted asylum? I lost track. It was two or three or four. As far as I could tell from the record, he had three brothers who were granted asylum and one had an application pending. His mother was granted asylum and his father as a derivative of his mother's asylum application. They all seemed to have been granted asylum sometime in the mid-1990s. What distinguishes Mr. Singh's case – well, I mean, every asylum case is based on its own particular facts. What distinguishes Mr. Singh's case from his family members and the basis for the finding of no well-founded fear, again, is these seven years. I mean, presumably if he went back now, we can assume that he would again live in the Bhopal region of India, run his trucking business, be married. And based on the evidence in the record, nothing would happen to him. There's no evidence in the record at all to support any sort of argument that the Indian government was aware of his – or had any interest in him while he was living in Bhopal. Now, tell me about this humanitarian idea. Would he be eligible for humanitarian asylum or eligible? Well, I just looked at his brief to the board, and I know we argued in our brief that he didn't raise the issue to the board. I didn't see any argument raised in his brief. So we would maintain that he didn't exhaust his remedies. He didn't raise that argument to the board. Even if he did, that the facts of his case don't come anywhere close to the facts in a case like Matter of Chen where there was eight years of imprisonment. There are very few cases where — Well, this guy, again, he's crediting his story. He was in prison a couple years and was beaten and so on on false charges that came about because of his membership in the All Sikh Student Federation. I believe the first imprisonment was for six months. Right, for about six months. And then the second one was for a couple of months. But, I mean, so assuming all of that is true, yes, he might have established past persecution, but it's a far stretch between past persecution and humanitarian asylum. I mean, again, the Matter of Chen case, which is the seminal one, it was eight years of imprisonment. And how much weight in these humanitarian asylum cases might be given to the fact that virtually his entire family is here on asylum? Well, I don't believe any at all because, again, each asylum case has to be judged on its own facts. I understand that, but I'm talking about humanitarianism now, not past persecution. Well, it's usually based on the severity of the past persecution. So it's the severity of his past persecution. His claim isn't based on his family member's claim. In some cases, maybe it would be. But in this case, it's really not. He relied on his family. So I'm not going to try to understand your position. Your position is that we should not interpret the humanitarian exception to have It's simply irrelevant that virtually all of his family is in this country. Based on what he claims, the basis of his claim to asylum, yes. Our primary position is that because none of this was raised or argued. I understand that. And you certainly preserved that. I understand that. Okay. But, yes. I see my time has expired. The Court has no further questions. Thank you. Thank you. Would you like a minute? Thank you. I'll keep it brief. On this issue of well-founded fear and the Chen matter, even if the government has been able to rebut the fear of future persecution, if the applicant can establish compelling reasons for being unwilling or unable to return to his home country because of severity of past abuse or past persecution, or there's a reasonable possibility that they may suffer other serious harm upon removal to that country, the case warrants a Chen finding of humanitarian asylum. We would submit there's no bright-line test as to the severity of past abuse. We would submit that on an individualized basis, this case does qualify. He was detained and tortured, if you will, for six months on his first arrest and held for at least two months on his second arrest. He lived in constant fear of being found out by the authorities, and the fact that he obtained a passport was no guarantor of his safety, even if he lived in Bhopal for a certain period of time. He found that when he left the United States, he left because the opportunity was right in terms of being able to safely leave the country without being found out and seek asylum in the U.S., which he immediately did. Thank you. Thank you very much. The case of Singh v. McKenzie is now submitted for decision. Thank both sides for their arguments.
judges: Tashima, Fletcher, Berzon